UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CR-393-1D
No. 5:21-CR-393-2D
No. 5:21-CR-393-3D

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>GEORGE WILLIAM GARVEN, )<br>ROBERT ANDREW HELMS, and )<br>WILLIAM RUSSELL DAVIS )<br>) | CRIMINAL INFORMATION |

The United States Attorney charges that:

1. From at least in or about April 2015, and continuing until at least in or about March 2020, both dates being approximate and inclusive, in the Eastern District of North Carolina and elsewhere, the defendants, GEORGE WILLIAM GARVEN, ROBERT ANDREW HELMS, and WILLIAM RUSSELL DAVIS did knowingly and willfully combine, conspire, and confederate to commit an offense against the United States, that is, mail fraud, in violation of 18 U.S.C. § 1341.

**Individuals and Entities**

2. Company A was a large, privately-owned roofing business headquartered in Raleigh, North Carolina. Company A maintained regional branch offices in Charlotte, North Carolina, and elsewhere.

3. GEORGE WILLIAM GARVEN resided in the Western District of North Carolina. GARVEN was the Vice-President and General Manager of Company A's office in Charlotte. As the General Manager, GARVEN was responsible for

supervising over 50 employees and overseeing all aspects of the office, including operations, finance, and human resources.

4. ROBERT ANDREW HELMS resided in the Western District of North Carolina. Among other businesses, HELMS owned and operated Helms Sales and Holdings ("Helms Sales"), a North Carolina limited liability corporation.

5. WILLIAM RUSSELL DAVIS resided in the Western District of North Carolina. DAVIS owned and operated R&K Davis Holdings ("R&K"), a North Carolina corporation that provided subcontracting services to the roofing industry. At all relevant times, HELMS and DAVIS were partners in the operation of R&K.

## Object of the Conspiracy

6. The object of the conspiracy and the scheme and artifice was for the defendants to steal funds from Company A and use those funds to enrich themselves, thereby causing Company A to incur losses of approximately $1.8 million.

## Manner and Means of the Conspiracy

The manner and means used to accomplish the object of the conspiracy included, but were not limited to, the following:

7. It was a part of the conspiracy and scheme and artifice that GARVEN identified Company A projects (hereinafter referred to as "targeted projects") with sufficient profit margin from which to embezzle funds without drawing the attention of Company A's management.

8. It was a part of the conspiracy and scheme and artifice that R&K was legitimately assigned as a labor subcontractor on some targeted projects. In those

instances, GARVEN would use bogus R&K invoices to process fraudulent "change orders" requests in Company A's accounting system. The change orders would make it appear that Company A was indebted to R&K for work beyond the scope of the original contract. In truth, R&K never performed any of the change order services. As a result, GARVEN caused Company A to issue payments to R&K to which R&K was not entitled.

9. It was a part of the conspiracy and scheme and artifice that GARVEN falsely and fraudulently assigned R&K as a labor subcontractor on targeted projects in which R&K was not involved in any capacity whatsoever. The embezzled funds were then paid to R&K under the guise of sham contracts, including additional amounts for change orders.

10. It was a part of the conspiracy and scheme and artifice that GARVEN caused Company A to issue checks to R&K for services it did not perform and to mail those checks from its Raleigh headquarters to the Charlotte branch office. Later, funds were transmitted by Company A electronically.

11. It was a part of the conspiracy and scheme and artifice that GARVEN instructed HELMS as to the amount of the kickback he wanted to receive and the manner in which it should be paid to him. HELMS transferred, and caused the transfer of, the criminal proceeds to GARVEN by a number of means, including prepaid Visa debit cards and checks drawn from the accounts of R&K and Helms Sales, respectively.

3

12. It was a part of the conspiracy and scheme and artifice that GARVEN directed R&K and Helms Sales to use the criminal proceeds to pay for renovation services at GARVEN's personal properties.

13. It was a part of the conspiracy and scheme and artifice that GARVEN used a portion of the criminal proceeds to pay $2,000 in cash to HELMS on a weekly basis, which was thereafter split between HELMS and DAVIS.

## Overt Acts

In furtherance of the conspiracy, and to achieve the unlawful objects thereof, one or more co-conspirators committed and caused to be committed the following overt acts, among others, in the Eastern District of North Carolina and elsewhere:

14. On or about January 28, 2019, GARVEN prepared a false and fraudulent R&K invoice, change order, and check request that purported to obligate Company A to pay $12,900 to R&K for roofing-related services allegedly performed at a project in Charlotte.

15. On or about January 30, 2019, GARVEN caused Company A to issue a check to R&K for $12,900 in connection with the project and to send the check via UPS from its Raleigh headquarters to the Charlotte branch office.

16. On or about January 31, 2019, DAVIS deposited the check into R&K's bank account.

17. On or about January 31, 2019, HELMS wrote two checks for GARVEN's benefit from the Helms Sales' bank account totaling $10,360; the memo lines of the checks falsely indicated that they were for "materials" and a "loan payment."

4

18. On or about January 31, 2019, HELMS wrote a $10,360 check from R&K's bank account to Helms Sales, representing a reimbursement of the unlawful payments to GARVEN.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE NOTICE

Each defendant is hereby provided notice that all of the defendant's interest in all property specified herein is subject to forfeiture to the United States.

Upon conviction of the offense alleged in this Criminal Information, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), made applicable to this proceeding by 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived, directly or indirectly, from proceeds traceable to the offense.

The forfeitable property includes, but is not limited to, the following:

Forfeiture Money Judgment:

(a) As to defendant GEORGE WILLIAM GARVEN, a sum of money representing the gross proceeds traceable to the commission of the offense personally obtained by the defendant in the amount of at least $1,570,442.

(b) As to defendant ROBERT ANDREW HELMS, a sum of money representing the gross proceeds traceable to the commission of the offense personally obtained by the defendant in the amount of at least $140,000.

(c) As to defendant WILLIAM RUSSELL DAVIS, a sum of money representing the gross proceeds traceable to the commission of the offense personally obtained by the defendant in the amount of at least $140,000.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant,

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

G. NORMAN ACKER, III
Acting United States Attorney

ADAM F. HULBIG
Assistant United States Attorney
Criminal Division

Date: October 21, 2021